# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. Nos. 12-59-17(EGS) |
| JONATHAN MCCOY LOGAN | ) | 13-248 (EGS) |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Jonathan McCoy Logan pled guilty to drug and gun related offenses in two criminal cases pursuant to a plea agreement, and was sentenced to an agreed-upon 147 months of incarceration. Several months after his sentencing, the government informed Mr. Logan that an FBI agent who was indirectly involved with his case had tampered with evidence in other cases. Mr. Logan later moved to vacate his sentences pursuant to 28 U.S.C. § 2255 and the Court denied the motions. Mr. Logan now moves for a certificate of appealability so that he can appeal this Court's decision. Because Mr. Logan has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), Mr. Logan's motion for a certificate of appealability is **DENIED**.

## I. Background

The Court's previous Memorandum Opinion set forth the facts in this case in detail. *See United States v. Logan*, No. CR 12-59-17(EGS), 2018 WL 5297812, at *1–4 (D.D.C. Oct. 25, 2018). What follows is a summary of the facts necessary to provide context for Mr. Logan's current motions.

### A. Investigation and Arrest

Mr. Logan was charged in two separate criminal cases based on evidence accumulated during an investigation of drug trafficking activity in Maryland and the District of Columbia, and evidence seized during Mr. Logan's October 21, 2011 arrest. *Id.* at *1. The investigation revealed that Mr. Logan sold cocaine to another indicted individual, Kelvin Heyward. *Id.* Wire-tapped calls between the two captured the details of specific drug transactions, as well as how the transactions were generally conducted. *Id.* The evidence obtained during Mr. Logan's October 21, 2011 arrest were a .32 semi-automatic handgun, over $14,000 on his person, and $4,000 and several plastic bags containing cocaine in his car. *Id.*

Based on the evidence obtained, an indictment was filed on March 8, 2012, charging Mr. Logan with several drug offenses. *Id.* The October 2011 arrest, and subsequent car search, resulted in an August 2013 indictment in Maryland, later transferred to

this district, charging Mr. Logan with several drug and gun offenses. *Id.*

Mr. Logan was arrested at his job, the All-In-One Stop in Clinton, Maryland, following the filing of the March 8, 2012 superseding indictment. *Id.* at *2. That same day, a team of FBI agents executed a search warrant at the All-In-One Stop. According to the United States Attorney's Office for the District of Columbia ("USAO-DC"), the investigation that resulted in Mr. Logan's indictment was conducted by the FBI's Safe Streets Task Force. *Id.*

The presence of one agent, Special Agent ("SA") Matthew Lowry, is particularly relevant to Mr. Logan's pending motion. SA Lowry was assigned to a different task force--the Cross-Border Task Force ("CBTF")--but he "provided some assistance to the overall investigation at the time of the 'take-down' in March 2012." *Id.* Specifically, SA Lowry participated in the execution of the search warrant at the All-In-One Stop which led to the seizure of several items. *Id.* SA Lowry was not listed on the chain-of-custody for any of the items seized from the All-In-One Stop. *Id.*

On October 1, 2014 the FBI informed USAO-DC that "Special Agent Lowry may have engaged in misconduct by tampering with evidence . . . includ[ing] tampering with narcotics and firearm evidence seized during investigations." Notice, ECF No. 563 at

3

1–2. The FBI's investigation into SA Lowry's misconduct was prompted by the discovery of SA Lowry under the influence of drugs in an FBI vehicle on September 29, 2014. *See* Criminal Action No. 13-248, Mem. Of Investigation, ECF No. 40-1 at 20.[1] The investigation revealed that SA Lowry had begun to remove FBI drug evidence in "late 2013." *Id.* SA Lowry admitted to using drugs from "late 2013 when he began, through September 29, 2014, when he was found [under the influence] in his FBI-issued vehicle." *Id.* SA Lowry was charged with, among other things, possession of heroin. *See* Criminal Action No. 15-34, Judgment in a Criminal Case ("Judgment"), ECF No. 30. He pled guilty to the charges and was sentenced to 36 months of incarceration. *Id.*

In November 2014, the government disclosed to Mr. Logan the information about SA Lowry's alleged wrongdoing. Notice, ECF No. 563 at 1.[2] The Court then directed the government to file status reports updating the Court on the status of the government's investigation into SA Lowry's alleged misconduct. Minute Order of November 13, 2014. The government explained SA Lowry's role in Mr. Logan's case as follows:

> [G]overnment counsel understands that Agent Lowry's involvement in the investigation . . . involved assisting in a large-scale

---

[1] When citing electronic filings throughout this Memorandum Opinion the Court cites to the ECF header page number, not the page number of the filed document.
[2] Unless otherwise indicated, docket citations in this Memorandum Opinion are to Criminal Action No. 12-59.

4

> "takedown" on March 12, 2012, specifically the execution of one search warrant on March 12, 2012, in Clinton, Maryland. Agent Lowry participated along with a team of other FBI agents in executing a search warrant at defendant Jonathan Logan's business location. . . . Agent Lowry was not listed on the chain-of-custody for any of the items seized from this location.

Criminal Action No. 13-248, Gov't. Response to Def. Ltr. to Court, ECF No. 18 at 1-2. The government also made clear that the only event in which SA Lowry participated in Mr. Logan's case--the execution of the search warrant on March 12, 2012--occurred five months after October 21, 2011, which was the ending date of the drug conspiracy with which Mr. Logan was charged. *Id.* Similarly, the proffer of facts explained that the gun seizure occurred during the October 21, 2011 arrest, several months before SA Lowry's involvement in the case. *See* Proffer, ECF No. 461 at 6.

### B. Guilty Plea and Sentence

On August 29, 2013, over a year before SA Lowry's misconduct came to light, Mr. Logan pled guilty before this Court to two drug conspiracy offenses and to one gun-related offense. One of the drug conspiracy offenses was in connection with the narcotics he sold to Mr. Heyward and for which he was indicted in Criminal Action No. 12-59, and the other was in connection with the drugs recovered from his car during his October 2011 arrest, which resulted in the indictment in

5

Criminal Action No. 13-248. *See* Proffer, ECF No. 461. The third offense was for using and carrying a firearm during a drug trafficking offense, also in connection with his October 2011 arrest. *See* Criminal Action No. 13-248, Proffer, ECF No. 3 at 6. The parties agreed to a 147-month term of incarceration pursuant to an 11(c)(1)(C) plea. *See* Addendum to Plea Agreement, ECF No. 527 at 1. On April 17, 2014, this Court sentenced Mr. Logan to a concurrent sentence of 87 months on the two conspiracy drug offenses, and a consecutive sentence of 60 months for the firearm offense for a total of 147 months consistent with the agreed-upon sentence. *See* Sentencing Hr'g Tr., ECF No. 627 at 35.

### C. 28 U.S.C. § 2255 Motion

On September 18, 2015, Mr. Logan, *pro se*, filed motions to vacate his convictions and sentences pursuant to 28 U.S.C. § 2255 arguing that SA Lowry's misconduct entitled him to relief under the statute. *See* Pet'r's Mot., ECF No. 613. Mr. Logan made two principal arguments: (1) that if he was aware of SA Lowry's misconduct, he would not have pled guilty; and (2) the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose SA Lowry's conduct prior to his plea. *Id.*

On February 6, 2018, over two years after he filed his motions, Mr. Logan filed a supplemental pleading, this time with

the assistance of counsel, making an additional argument that there was a technical error in the calculation of Mr. Logan's sentence, *see* Criminal Action No. 13-248, Pet'r's Suppl. Mot., ECF No. 40 at 3. He argued that "the pre-sentence report incorrectly stated Logan . . . was on probation at the time he committed the instant offense . . . giving him an additional 2 points to his criminal history" under the Sentencing Guidelines. *Id.* at 3–4. Mr. Logan argued that his Guidelines range for the drug offenses should have been 78-97 months and did not take issue with the 60-month consecutive sentence he received for the gun-related offense. *Id.* Thus, Mr. Logan argued that his actual sentencing range should have been 138-157 months and therefore the 147-month sentence that he received was erroneous.

The Court denied Mr. Logan's section 2255 motions and his supplemental amendment to that pleading on October 25, 2018. *See Logan*, 2018 WL 5297812 at *4-8. The Court found that Mr. Logan's claims related to his guilty plea were devoid of factual support, that his *Brady* claim had no merit, and that his claims related to his sentencing were procedurally barred.[3] *Id.* Mr. Logan now asks this Court to grant a certificate of

---

[3] The Court noted that even if his claim was timely it would have failed because, even under his own calculation, Mr. Logan agreed to a sentence that was within the Guideline range and therefore there was no error in accepting the plea agreement which governed the length of his sentence. *See Logan*, 2018 WL 5297812 at *7-8.

appealability based on the denial of his section 2255 motions. *See* Def.'s Mot., ECF No.695.

**II. Legal Standard for Issuance of a Certificate of Appealability**

A certificate of appealability must be issued for an appellate court to hear an appeal from a "final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). The federal district court judge who rendered the judgment for which appellate review is sought must either issue the certificate of appealability or explain why it should not be issued. Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, the petitioner "need not show that he should prevail on the merits.... Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *United States v. Mitchell*, 216 F.3d 1126, 1130 (D.C. Cir. 2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

If the court issues the certificate of appealability, it must specify which issues satisfy the substantial showing requirement. *Id.* at 1130. If a district court judge denies a request for a certificate of appealability, a petitioner may

request one from the circuit court judge. Fed. R. App. P. 22(b)(1).

**III. Analysis**

The issues in Mr. Logan's section 2255 motion can be analyzed in two categories: (1) issues concerning his plea agreement; and (2) issues concerning his sentence. The Court first discusses whether it should issue a certificate for appealability for Mr. Logan's plea agreement claims, and then for his claim of error at sentencing.

**A. Mr. Logan Has Not Shown that the Court's Decision on Constitutional Issues related to his Guilty Plea was Debatable**

Mr. Logan's section 2225 motion was based on a series of claims in connection with the role of SA Lowry in his case. His original petition, filed September 18, 2015, raised four issues which he argues affected his decision to plead guilty: (1) SA Lowry's alleged admission that he tampered with evidence during the search of Mr. Logan's business address; (2) the lack of procedural safeguards to protect the evidence recovered by the CBTF during his October 2011 arrest; (3) the DEA test results in connection with the search of his place of business which allegedly show SA Lowry tampered with evidence during the search; and (4) the government's failure to disclose SA Lowry's illegal actions in violation of its *Brady* obligations. *See* Pet'r's Mot., ECF No. 613.

Mr. Logan's first three claims relate to alleged evidence tampering in his case. In his motion for a certificate of appealability, Mr. Logan highlights a portion of an exhibit that he submitted with his supplement. Def.'s Mot., ECF No. 1-2. This portion is taken from a document regarding the investigation of SA Lowry and states:

> Although Lowry's defense counsel initially reported that Lowry took drug evidence from cases that were already in the prosecution phase and had already had plea deals with the defendants, Lowry stated that he was not concerned with the status of the cases from which he was using the drug evidence. Lowry said that he took drug evidence from any case that he was associated with and would have a plausible reason for checking out the drug evidence, he said he was just trying to get through the day.

*Id.* Mr. Logan argues that the above statement, which was attached to his original motion, shows that SA Lowry had access to all evidence seized at the time Mr. Logan was arrested and at the earlier stop when he was searched and therefore SA Lowry tampered with the evidence. *Id.* at 2.

As the Court stated in its Memorandum Opinion, the government's several disclosures in this case indicated that SA Lowry was not involved in the chain of custody for any evidence seized from Mr. Logan's place of business. *Logan*, 2018 WL 5297812 at *5 (citing Criminal Action No. 13-248, Gov't. Response to Def. Ltr. to Court, ECF No. 18 at 1-2). The record

10

is clear that the only event in which SA Lowry participated in Mr. Logan's case--the execution of the search warrant on March 12, 2012--occurred five months after October 21, 2011, the end date of the drug conspiracy with which Mr. Logan was charged. *Id.* That search is not relevant to any of the charges to which he pled guilty since it was conducted several months after the time frame of the drug conspiracy. *Id.* (citing Proffer, ECF No. 461.) Similarly, the proffer of facts shows that the gun seizure occurred during the October 21, 2011 arrest, several months before SA Lowry's involvement in the case. *Id.* \*3.

Once a defendant who pleads guilty has been sentenced, permission to withdraw the plea will be granted only "in those 'extraordinary cases' when the court determines that a manifest injustice would result from allowing the plea to stand." *United States v. Roberts*, 570 F.2d 999, 1008 (D.C. Cir. 1977). Moreover, "[t]o have a plea set aside on a section 2255 petition, the petitioner must show that the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C. Cir. 2001) (citations and internal quotation marks omitted). The Court's finding that Mr. Logan's claim that evidence was tampered with in his case was not factually supported and therefore his plea proceeding not

11

the result of a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure, is not debatable. *See Logan*, 2018 WL 5297812 at *4-8.

Similarly, the Court's ruling on Mr. Logan's *Brady* claim is not debatable.[4] The Court held that Mr. Logan's *Brady* claim fails because he cannot show that the government either willfully or inadvertently suppressed evidence against him. *Id.* at *6–7. The government, including law enforcement, was not aware of SA Lowry's conduct during Mr. Logan's plea or sentencing. *Id.* The government learned of SA Lowry's conduct on September 29, 2014, five months after Mr. Logan was sentenced. *Id.* at *6 (citing Criminal Action No. 13-248, Mem. Of Investigation, ECF No. 40-1 at 20.). USAO-DC, which was recused from the investigation, was informed two days later, on October 1, 2014, and alerted Mr. Logan of the investigation into SA Lowry's conduct on November 13, 2014 in response to this Court's Order. Notice, ECF No. 563 at 1. The record shows that, under these circumstances, the government provided the information to Mr. Logan within a reasonable time after receiving notice of the investigation from the FBI (*i.e.*, 44 days), and provided the Court and parties with

---

[4] Mr. Logan does not appear to challenge the Court's ruling on his *Brady* claim, but, in the abundance of caution, the Court will analyze that claim nonetheless.

12

regular updates about the investigation. *See id.* Accordingly, there was no *Brady* violation in this case.

Because Mr. Logan has not made "a substantial showing of the denial of a constitutional right," the Court **DENIES** his motion for a certificate of appealability on his claims related to his guilty plea. *See* 28 U.S.C. § 2253(c)(2).

### B. Mr. Logan Has Not Shown that the Court's Decision on Constitutional Issues related to his Sentence was Debatable

Mr. Logan supplemented his section 2255 motion to include a claim related to an alleged sentencing calculation error. *See* Criminal Action No. 13-248, Pet'r's Suppl. Mot., ECF No. 40 at 3-5. Under section 2255, a defendant generally must file a motion for relief under the statute within a year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Mr. Logan filed his original petition on September 18, 2015, within one-year of November 2014, the date on which the government disclosed the investigation into SA Lowry, and therefore his original petition was timely filed. *Logan*, 2018 WL 5297812 at *7. However, Mr. Logan supplemented the petition more than two years later, on February 6, 2018, to add an additional issue based on an alleged sentence calculation error. *See* Criminal Action No. 13-248, Pet'r's Suppl. Mot., ECF No. 40 at 3-5. That supplement states

that "the pre-sentence report incorrectly stated Logan . . . was on probation at the time he committed the instant offense . . . giving him an additional 2 points to his criminal history" under the Sentencing Guidelines. *Id.* at 3-4. Therefore, Mr. Logan argues, he is entitled to new concurrent sentences consistent with a Guidelines range of 78-97 months for the conspiracy drug offenses followed by a 60-month consecutive sentence on the gun offense. *Id.* at 5. The Court ruled that Mr. Logan's sentencing claim was procedurally barred because it was filed well after the one-year time requirement and did not meet any exceptions to that rule. *Logan*, 2018 WL 5297812 at *7.

The Court considered two exceptions that would allow Mr. Logan's sentencing claim to proceed. *Id.* First, an amendment to a section 2255 motion is "permitted to relate back [to the original filing] only when 'the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *See United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (quoting Fed. R. Civ. P. 15(c)(2)). In this Circuit, a proposed amendment does not relate back when it "makes claims or is based on occurrences 'totally separate and distinct, in both time and type from those raised in [the] original motion." *Id.* (citations omitted). In his original 2255 motion, Mr. Logan argued that he is entitled to relief based on

the actions of SA Lowry and the CBTF. *See* Pet'r's Mot., ECF No. 613. His claim of a sentencing calculation error is therefore based on occurrences "totally separate and distinct, in both time and type" from those raised in his original motion. *See Hicks*, 283 F.3d at 388. Therefore, Mr. Logan's supplemental motion did not relate back to his original filing.

Second, the Court considered Mr. Logan's argument that the one-year deadline should be equitably tolled. *Logan*, 2018 WL 5297812 at *7 The Court found that equitable tolling did not apply to this case because Mr. Logan failed to point to any "extraordinary circumstance[s]" which would allow the Court to do so. *Id.* (*citing United States v. McDade*, 699 F.3d 499, 506 (D.C. Cir. 2012) (holding deadline was equitably tolled when defendant timely advised counsel he wanted to raise claim four months in advance of deadline and counsel failed to file in time)). This is partially because, notwithstanding the alleged mistake, Mr. Logan was sentenced within the sentencing range that he asks the Court to apply today. Because Mr. Logan agreed to, and received, a sentence that was within the Guideline Range, the Court held there was no error in accepting the plea agreement. *Id.* Accordingly, the Court does not find that jurists would find it debatable whether Mr. Logan's petition states a valid claim of a denial of a constitutional right, nor find it debatable whether the Court was correct in its procedural

15

ruling. *See United States v. Saro*, 252 F.3d 449, 453 (D.C. Cir. 2001).

Because Mr. Logan has not made "a substantial showing of the denial of a constitutional right," the Court **DENIES** his motion for a certificate of appealability on his sentencing claim. *See* 28 U.S.C. § 2253(c)(2).

**IV. Conclusion**

For the foregoing reasons, Mr. Logan's motion for a certificate of appealability is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

    **SO ORDERED.**

**Signed:     Emmet G. Sullivan
             United States District Judge
             December 17, 2019**